Les ASPIN, Plaintiff,

v.

UNITED STATES DEPARTMENT OF DEFENSE, Defendant.

No. 77–C–219.

United States District Court, E. D. Wisconsin.

June 23, 1978.

Mark H. Lynch, American Civil Liberties Union Foundation, Washington, D.C., Mark A. Frankel, Madison, Wis., Timothy J. Elverman, Janesville, Wis., for plaintiff.

Barbara Allen Babcock, Lynne K. Zusman, Paul F. Figley, Attys., Dept. of Justice, Civ. Div., Washington, D.C., Joan F. Kessler, U.S. Atty., Milwaukee, Wis., for defendant.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

This case is before me on cross-motions for summary judgment. The case stems from a request that had been made by the plaintiff on May 19, 1976, that pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, the Department of Defense publicly disclose the best available intelligence estimates of Soviet naval force levels for 1975, 1979, 1980 and 1985 for (a) missile-equipped major surface ships, (b) major surface force combatants, (c) nuclear submarines, and (d) conventional submarines. Although the information requested was available to the plaintiff in his capacity as a member of Congress, under the rules of the House of Representatives the plaintiff could not publicly disclose the information. Mr. Aspin therefore invoked the FOIA to achieve public disclosure.

Subsequently, the defendant denied the plaintiff's request and alleged that the requested records fell within two exemptions to the public disclosure requirements of the

FOIA, 5 U.S.C. §§ 552(b)(1) and (3). The plaintiff, having exhausted his administrative remedies under the FOIA, now seeks judicial review pursuant to 5 U.S.C. § 552(a)(4)(B) of the defendant's refusal to release the information.

The United States Supreme Court has recently described the goal of the Act in these terms:

"The basic purpose of FOIA is to insure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *National Labor Relations Board v. Robbins Tire and Rubber Company,* —— U.S. ——, ——, 98 S.Ct. 2311, 2327, 57 L.Ed.2d 159 (1978).

The Court also discussed the statutory exemptions and stated:

"As we have repeatedly emphasized, 'the Act is broadly conceived.' *EPA v. Mink, supra* [410 U.S. 73], at 80 [93 S.Ct. 827, at 832, 35 L.Ed.2d 119], and its 'basic policy' is in favor of disclosure. *Dept. of Air Force v. Rose, supra* [425 U.S. 352], at 361 [96 S.Ct. 1592, at 1599, 48 L.Ed.2d 11]. In 5 U.S.C. § 552(b), Congress carefully structured nine exemptions from the otherwise mandatory disclosure requirements in order to protect specified confidentiality and privacy interests. But unless the requested material falls within one of these nine statutory exemptions, FOIA requires that records and material in the possession of federal agencies be made available on demand to any member of the general public." *Id.* at ——, 98 S.Ct. 2316.

■ In determining whether the Act applies, the burden is upon the government to establish that the information falls within one or more of the exemptions. 5 U.S.C. § 552(a)(4)(B). I believe that on the record before me the defendant has met such burden. I find that the information requested by the plaintiff falls squarely within the exemption of 5 U.S.C. § 552(b)(1), and the defendant is therefore entitled as a matter of law to summary judgment. Since I find that the information requested is exempt from public disclosure under § 552(b)(1), I need not reach the defendant's claim that the information is also exempt under § 552(b)(3).

■ The first exemption to the FOIA provides that the disclosure provisions of the Act do not apply to matters that are:

"(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order; . . ." 5 U.S.C. § 552(b)(1).

Thus, once it is established that particular records are specifically authorized to be kept secret in the interest of national defense or foreign policy and that those records are in fact classified pursuant to the provisions of an appropriate executive order, those records are exempt from the mandatory disclosure provisions of the FOIA.

The Department of Defense claims that executive order 11652, 3 C.F.R. 339 (1974), authorizes it to classify the information on Soviet naval forces requested by the plaintiff as secret. Executive order 11652 provides:

"Section 1. *Security Classification Categories.* Official information or material which requires protection against unauthorized disclosure in the interest of the national defense or foreign relations of the United States (hereinafter collectively termed 'national security') shall be classified in one of three categories, namely 'Top Secret,' 'Secret,' or 'Confidential,' depending upon the degree of its significance to national security. No other categories shall be used to identify official information or material as requiring protection in the interest of national security, except as otherwise expressly provided by statute."

Executive order 11652 further provides a standard which must be met in order for information to be classified as "secret," saying it:

". . . refers to that national security information or material which requires a substantial degree of protection. The test for assigning 'secret' classification shall be whether its unauthorized disclosure could reasonably be expected to cause serious damage to the national security. Examples of 'serious damage' include disruption of foreign relations significantly affecting the national security; significant *impairment of a program or policy directly related to the national security;* revelation of significant military plans or intelligence operations; and compromise of significant scientific or technological developments relating to national security. The classification 'secret' shall be sparingly used." Executive Order 11652, § 1(B) (emphasis added).

The defendant claims, and it has not been disputed, that the source which contains the information requested by the plaintiff is a Department of Defense multi-volume publication entitled "Defense Intelligence Projections for Planning." First Affidavit of Harold R. Aaron, Lieutenant General, USA, Deputy Director, Defense Intelligence Agency, ¶ 3. Published originally in August, 1975, the document as a whole was first classified pursuant to executive order 11652 by the Defense Intelligence Agency as "top secret." *Id.* Those portions of the document required to fulfill the plaintiff's request were classified originally as "secret." *Id.* ¶ 4. Upon the plaintiff's request for information, Lieutenant General Aaron and the staff of the Defense Intelligence Agency reviewed the original classification of the requested information and concluded ". . . that the initial classification determinations were correct at the time they were made and that circumstances have not changed so as to warrant either downgrading or disclosure of the information today. Accordingly, . . . the records which contain the information which would be responsive to Plaintiff's request are currently properly classified as 'secret.'" *Id.*

The defendant in its affidavits provided several reasons why it believes that public disclosure of the government's best available intelligence estimates of Soviet naval strength would "cause serious damage to the national security," justifying the classification of the information as "secret." Such disclosure would reveal the judgment of the United States intelligence community as to the extent of Soviet naval strength. *Id.* ¶¶ 5, 6. This in turn would reveal the strengths or weaknesses of the United States' intelligence gathering effort as well as the effectiveness of the Soviet's own security and counterintelligence programs. *Id.* ¶¶ 10, 13; affidavit of Sayre Stevens, Deputy Director of the National Foreign Assessment Center, ¶¶ 4, 7.

Disclosure of intelligence estimates would reveal the naval threat the United States is seeking to meet, which in turn will assist the Soviets in determining the most effective manner for the allocation of their military budget and other resources. Aaron, ¶ 10; Stevens, ¶¶ 4, 5, 8. Finally, disclosure of this information might diminish the faith of allies in the United States' ability to protect classified information, thereby increasing their reluctance to provide this country with information garnered through their intelligence gathering efforts. Aaron, ¶ 10.

■ These statements in the defendant's affidavits support the conclusion that disclosure of the information requested would seriously damage national security. From such conclusion, it follows that the information was properly classified as "secret" under Executive order 11652 and is therefore exempt from public disclosure under 5 U.S.C. § 552(b)(1). Where detailed affidavits are provided which demonstrate that the documentary material for which an exemption is claimed on grounds of national security have been conscientiously re-examined by a classification officer and remains classified, and there is no showing of any lack of "good faith" on the part of the government, the court need go no further in its examination. *Weissman v. Central Intelligence Agency,* 565 F.2d 692 (D.C.Cir. 1977); *Frank v. Central Intelligence Agency,* No. 77–14–D, Slip op. at 4 (S.D.Ia.1977);

*Bennett v. U.S. Department of Defense,* 419 F.Supp. 663 (S.D.N.Y.1976).

For summary judgment to be granted under Rule 56, Federal Rules of Civil Procedure, the moving party must show that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law. In opposition to the defendant's motion for summary judgment, the plaintiff claims that there are disputes over two different classes of material fact. First, the plaintiff claims that the character of the information requested is in issue because the parties disagree as to the accuracy of the estimates made of Soviet naval strength. The accuracy of these estimates, however, is not controlling in assessing the damage to national security that would follow from disclosure of the estimates. Accurate or not, disclosure of the estimates would reveal the basis on which American policymakers were acting.

Second, the plaintiff claims that whether disclosure of the intelligence estimates would cause damage to national security is a subject of factual dispute. He points to the fact that in 1972, then Chief of Naval Operations, Elmo Zumwalt, revealed in public hearings before the House Committee on Armed Services intelligence estimates of Soviet naval strength similar to those estimates requested by the plaintiff. As the defendant points out, however, the release of a second set of estimates would afford Soviet intelligence analysts the opportunity to compare the two sets of figures to analyze where and how improvements in United States intelligence gathering had been made. Second Affidavit of Aaron, ¶ 11. The fact that prior releases had been ·made was weighed during the classification reviews done by the Defense Intelligence Agency. *Id.* Moreover, past release of confidential information should not bind the executive branch if at a later point in time it is determined that further release would jeopardize national security. *Halperin v. Central Intelligence Agency,* 446 F.Supp. 661, 665–66 (D.D.C.1978).

Finally the plaintiff claims that because the requested intelligence estimates are of an aggregate nature and there are many undisclosed variables used in reaching them, their disclosure would not reveal anything which would be detrimental to the national defense. I am not persuaded, however, that the plaintiff's disagreement with the defendant over the impact of public disclosure on national security is sufficient to deny the defendant summary judgment. A court reviewing FOIA claims is not "to test the expertise of the agency or to question its veracity where nothing appears to raise the issue of good faith." *Maroscia v. Levi, et al.,* 569 F.2d 1000 at 1003 (7th Cir. 1977); *Weissman v. Central Intelligence Agency,* 565 F.2d 692, 697 (D.C.Cir.1977); *Alfred E. Knopf, Inc. v. Colby,* 509 F.2d 1362, 1369 (4th Cir.), *cert. denied,* 421 U.S. 992, 95 S.Ct. 1999, 44 L.Ed.2d 482 (1975). This view is supported by the legislative history of this statutory exemption:

> "[T]he conferees recognize that the Executive departments responsible for national defense and foreign policy matters have unique insights into what adverse affects [sic] may occur as a result of public disclosure of a particular classified record. Accordingly, the conferees expect that Federal courts, in making *de novo* determinations in section 552(b)(1) cases under the Freedom of Information law, will accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record." [Conference Report No. 93–1200, 93rd Cong., 2d Sess., U.S.Code Cong. and Admin.News 1974 at p. 6290.]

In this case, Mr. Aspin has made no claim that the defendant acted in bad faith nor has the plaintiff effectively refuted the defendant's claim that disclosure would damage national security. The defendant has followed the procedures prescribed by Executive order 11652 for the classification of the information requested. The classification of the information as "secret" is supported by reasonable arguments in the defendant's affidavits. An *in camera* inspection of the documents would reveal the exact levels of United States intelligence estimates, but I doubt that it would add

meaningful illumination on the extent of the damage to national security which might result from the release of those estimates. Accordingly, I am persuaded that the defendant is entitled to summary judgment.

Therefore, IT IS ORDERED that the defendant's motion for summary judgment be and hereby is granted.

IT IS ALSO ORDERED that the plaintiff's motion for summary judgment be and hereby is denied.

IT IS FURTHER ORDERED that this action be and hereby is dismissed.