**UNITED STATES of America, Plaintiff,**

v.

**The PROGRESSIVE, INC., Erwin Knoll, Samuel Day, Jr., and Howard Morland, Defendants.**

**No. 79–C–98.**

United States District Court, W. D. Wisconsin.

June 15, 1979.

**6**

Frank M. Tuerkheimer, U.S. Atty., W. D. Wis., Madison, Wis., Thomas S. Martin, Deputy Asst. Atty. Gen., Elizabeth Gere Whitaker and Robert E. Cattanach, Attys., U.S. Dept. of Justice, Washington D.C., for plaintiff.

Earl Munson, Jr., LaFollette, Sinykin, Anderson & Munson, Madison, Wis., for all defendants except Morland.

Thomas P. Fox, Madison, Wis., for Morland.

## MEMORANDUM AND ORDER

WARREN, District Judge.

On June 12, 1979, the Court heard oral argument *in camera* on defendants' motion to reconsider and to vacate the preliminary injunction issued by this Court on March 26, 1979.

On March 26, 1979, the Court found that the facts and circumstances in this case fall within the extremely narrow recognized area involving national security, in which a prior restraint on publication was appropriate. The Court granted the preliminary injunction pursuant to the Atomic Energy Act, 42 U.S.C. § 2280, and also found that an injunction would be warranted even in the absence of statutory authorization because of the existence of the likelihood of direct, immediate, and irreparable injury to this nation.

Defendants have filed their motion to reconsider, alleging that recent developments and publication of certain articles since the March 26, 1979 hearing have rendered the preliminary injunction moot and ineffectual.

Basically, the defendants argue that they cannot be enjoined from publishing the

Morland article under either the Atomic Energy Act of 1954 or the United States Constitution because the information it contains on the three key concepts—separate stages, compression and radiation coupling—is already in the public domain. Therefore, they state that the injunction against *The Progressive* is ineffective in preventing other countries from learning the three essential concepts involved in hydrogen bomb design and construction.

The contention that "the secret is out" and that therefore the injunction must be lifted advances on two fronts. One contention made by the defendants is that the government itself was responsible for the declassification of portions of UCRL 4725 and UCRL 5280 with the inadvertent result that the entire documents were available to the public in the open archives of the Los Alamos Scientific Library for a period of several years. Thus, they argue that the government is now estopped from seeking to enjoin the publication of the very same information which the government itself made available.

A second contention deals with a series of non-governmental publications. Defendants cite several articles, including articles in the *Milwaukee Sentinel, Fusion* magazine and *Encyclopedia Americana*, which allegedly reveal one or all of these three key concepts. The defendants emphasize that the *Milwaukee Sentinel* articles, in particular, contain these concepts and were written and published in the context of this case. In light of this, defendants argue that they are authoritative documents.

The government strenuously contends that only two articles contain authoritative information on hydrogen bomb construction: UCRL 4725 and UCRL 5280. Plaintiff states these two documents were erroneously declassified and placed in the public section at the Los Alamos Scientific Library. However, when this error was discovered, these documents were immediately removed from the public shelves at the Los Alamos Scientific Library.

Plaintiff argues that all of the other articles and documents cited by defendants constitute "literature of speculation" and contain isolated bits of information which are so speculative and disjointed as to be meaningless. The government states that these articles fail to contain the accurate and uniquely detailed information on all three concepts found in the Morland article.

Plaintiff counters defendants' argument about the effectiveness of continuing the injunction against *The Progressive* and the other defendants by arguing that the case has not changed since the injunction was first issued. The government states that, unlike the situation in the Pentagon Papers case, no other publications have published the same or similarly accurate, comprehensive and detailed articles on the construction of hydrogen weapons. Thus, the preliminary injunction against the defendants would still be effective and is warranted under the provisions of 42 U.S.C. § 2280. The government argues that, even in the absence of this statutory authority, the injunction would still be warranted because of the existence of the likelihood of direct, immediate and irreparable injury to this country.

The Court is now faced with resolving these conflicting contentions.

Certain basic issues must be addressed by the Court. Admittedly, UCRL 5280 "reveals in a thermonuclear weapons context the three concepts which the government has described as the essential secret of the H-bomb." (Stipulation of the parties, June 11, 1979). Therefore, the Court must first determine whether documents, such as UCRL 5280 and UCRL 4725 are "in the public domain."

In *Alfred A. Knopf, Inc. v. Colby*, 509 F.2d 1362, 1370 (4th Cir. 1975), *cert. denied*, 421 U.S. 992, 95 S.Ct. 1555, 44 L.Ed.2d 482 (1975), *reh. denied*, 422 U.S. 1049, 95 S.Ct. 2669, 45 L.Ed.2d 702 (1975), the court held that classified information "was not in the public domain unless there has been official disclosure of it." The court continued:

Rumor and speculations circulate and sometimes get into print. It is one thing for a reporter or author to speculate or

8

guess that a thing may be so or even, quoting undisclosed sources, to say that it is so; it is quite another thing for one in a position to know of it officially to say that it is so. The reading public is accustomed to treating reports from uncertain sources as being of uncertain reliability, but it would not be inclined to discredit reports of sensitive information revealed by an official of the United States in a position to know of what he spoke. *Id.*

In this case, UCRL 4725 and UCRL 5280 were inadvertently declassified in toto. (Cucchiara Affidavit, ¶¶ 7, 8). They were available to the public at the Los Alamos Scientific Library. (Freed Affidavit, ¶ 4; Sewell Affidavit, ¶ 4). However, as soon as the declassification error was discovered, the documents were removed from the public shelves. (Freed Affidavit, ¶ 7; Sewell Affidavit, ¶ 4).

Whether or not the secret was compromised by this error can only be a matter of conjecture. The Court has reviewed the affidavits regarding access and is unable to conclude one way or another whether the vital data was obtained by scientists or intelligence agents from other nations.

■ Prior release of classified information should not be binding on the government if, at a later time, it is determined that further release would jeopardize national security. *Aspin v. Department of Defense*, 453 F.Supp. 520 (E.D.Wis.1978); *Halperin v. Central Intelligence Agency*, 446 F.Supp. 661 (D.D.C.1978).

■ The Court is compelled to the conclusion that, from a legal point of view, the government's error in inadvertently declassifying UCRL 4725 and UCRL 5280 did not move these documents into "the public domain" and further, that there is no showing that the injunction became ineffectual.

The Court must now determine whether any published materials admittedly in the public domain contain information on the three key concepts.

At the time of the issuance of the preliminary injunction, the Court found that information was available on possibly two of the key concepts. However, the Court found that the concept of radiation coupling had not previously been revealed in the public literature and that the maintenance of the secrecy of this concept was so vital to the security of this nation that a preliminary injunction against the defendants was justified.

In support of their motion, the defendants have filed copies of several recently published articles with the Court. The Court has conducted a detailed examination of these articles, especially the *Milwaukee Sentinel* articles of April 30 and May 1, 1979 by Joe Manning and recent *Fusion* magazine articles.

The *Milwaukee Sentinel* article of May 1, 1979 is pertinent on this concept of radiation coupling because, as defendants argue, there is one statement that bears on the utilization of soft x-ray pressure. The relevant paragraph states:

Recent information published in Fusion magazine suggests that Teller and Ulam may have come up with some kind of arrangement that would compress the fuel through the use of soft x-rays from the atomic bomb blast reflected off the bomb casing wall. Soft x-rays are low energy rays like those given off by a color television set.

The Court notes that this statement is couched in terms of speculation and conjecture. It utilizes such generalized terms and touches the key concept so obliquely that it can hardly be considered a definitive affirmation of one crucial step in the construction of a thermonuclear weapon.

Similar problems exist with the *Fusion* magazine articles cited by defendants. Any information on the key concepts in these articles is stated in a highly speculative and generalized framework.

In the Court's opinion, there is a distinct and marked difference between specifying with particularity the three key concepts necessary to construct a hydrogen weapon and merely mentioning numerous concepts that may or may not be important and relevant in the construction of a thermonuclear device.

In this regard, the Court finds that the *Milwaukee Sentinel* articles, the *Fusion* magazine articles and other publications cited by the defendants are clearly dissimilar from the Morland article which provides an accurate, detailed and comprehensive description and analysis of hydrogen weapon construction.

■ Therefore, after detailed study of the documents filed by the parties and due consideration of the oral arguments of counsel, the Court concludes that the article, "The H–Bomb Secret—How We Got It, Why We're Telling It," contains a comprehensive description of radiation coupling, along with the other two key concepts, that is not found in the public realm. Some articles in the public domain contain information on one or another of the other two concepts. However, only the Morland article contains a comprehensive, accurate and detailed analysis of all three concepts utilized in the construction of a thermonuclear weapon.

■ Therefore, the Court finds that publication or other disclosure of the restricted data contained in the Morland article would likely constitute a violation of the Atomic Energy Act, 42 U.S.C. § 2274(b) and would likely cause a direct, immediate and irreparable injury to this nation.

Accordingly, the Court hereby denies defendants' motion for reconsideration and vacation of the preliminary injunction issued by the Court on March 26, 1979. This memorandum and order constitutes the Court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.