**Tzvih TINMAN, Plaintiff,**

v.

**BLUE CROSS & BLUE SHIELD OF MICHIGAN, a Michigan Non–Profit Corporation, Defendant.**

No. 00–72327.

United States District Court,
E.D. Michigan,
Southern Division.

Nov. 20, 2001.

Michael G. Wassmann, Lance C. Young, Elwood S. Simon Assoc., Birmingham, MI, for Plaintiff.

Collen C. Cohan, Joseph W. Murray, Blue Cross & Blue Shield of Michigan, Detroit, MI, G. Chris Bernard, Charles N. Raimi, Bodman, Longley, Detroit, MI, James J. Walsh, Bodman. Longley, Ann Arbor, MI, Julie A. Lawson, Clark Hill, Detroit, MI, for Defendant.

MEMORANDUM OPINION AND ORDER CONCERNING DEFENDANT'S MOTIONS TO MAINTAIN DOCUMENTS UNDER SEAL (DOCKET # S 40 & 55) AND PROTECTIVE ORDER FOR PLAINTIFF'S COUNSEL

PEPE, United States Magistrate Judge.

Before the Court are Defendant Blue Cross & Blue Shield of Michigan's ("BCBSM") motions to maintain documents under seal. This matter has been referred to this Court for hearing and determination pursuant to 28 U.S.C. § 636(b)(1)(A). For the reasons discussed below, Defendant's motions are denied.

## I. BACKGROUND

On April 4, 2001, the district court issued a protective order providing, *inter alia*, that discovery documents which Defendant marked as "confidential" were to be to be filed under seal if such documents were to be attached as exhibits to motions/pleadings. Significantly, the protective order stipulated that, after these exhibits were filed under seal, Defendant had to file a motion to maintain the documents under seal.[1] On July 12, 2001, Plaintiff filed his Motion to Compel Production of Documents Inappropriately Withheld or Redacted by Defendant on Claims of Privilege (Docket # 36). Pursuant to the protective order, his counsel attached the exhibits under seal (Docket # 37). On July 25, 2001, Defendant filed a motion containing a one-sentence conclusory assertion that the exhibits marked "confidential" should remain under seal.[2] On August 23, 2001, Plaintiff filed his Motion to Compel

---

1. In pertinent part, the Protective Order provides: "In the event any documents which are confidential under this Order are filed with the Court as an exhibits with respect to any motion and/or proceeding before the Court, the document shall be filed under seal and not disclosed publicly except as ordered by the Court ... [Defendant] shall immediately file a motion with respect to any such document(s) requesting a Court ruling that maintaining the documents under seal is legally proper ...". (Protective Order at ¶ 11.)

2. Specifically, Defendant's brief was as follows: "Defendant Blue Cross & Blue Shield of Michigan (BCBSM) relies upon F.R.Civ.P. 26(c) in support of its Motion to Maintain Documents Under Seal."

Production of Information and Documents in Response to Plaintiff's Second Set of Interrogatories and Document Requests (Docket # 48). Again, pursuant to the protective order, counsel filed the exhibits under seal (Docket # 49). On September 7, 2001, Defendant filed another brief motion to maintain these exhibits under seal as well. Following an initial hearing, the undersigned issued a September 24, 2001 Order specifically informing Defendant's counsel that the burden was on BCBSM to establish why the documents marked confidential and attached to the motions should remain under seal, and that a one-sentence conclusory allegation would generally be insufficient.

Accordingly, on October 25, 2001, Defendant filed a supplemental brief in support of his July 25th and September 7th requests to maintain the exhibits under seal. In this supplemental brief, Defendant states that exhibits F–O,Q,R,T,U & V from Plaintiff's July 12th motion and Exhibit 4 from Plaintiff's August 23rd motion should remain under seal. While this supplemental brief is more than one sentence, it nonetheless fails to detail clearly why the exhibits at issue should remain under seal. Instead, BCBSM relies on general conclusory assertions about future competitive harm. On November 16, 2001, a second hearing was held on the motions. To assure the opportunity for full and unrestrained discussion of what might be proprietary BCBSM information, the hearing was closed to the public and its court record would have been maintained under seal if appropriate. The undersigned then asked Defendant's counsel to explain why any specific exhibit should remain under seal. Many of the documents at issue relate to an emergency room health care claims processing system that is no longer being used by BCBSM. No substantial justification was given for keeping any document under seal. BCBSM fears their health insurance competitors in Michigan could gain a competitive advantage by seeing certain of these documents. Yet, the primary concerns of BCBSM can be accommodated by means less restrictive than sealing the documents. Limitations on their review and copying by BCBSM's competitors without further Court consideration, and limitations on the copying and use outside of this litigation by Plaintiff's counsel absent further order of the Court, will serve any legitimate proprietary concerns of BCBSM without overbroad restrictions on access and use by the media or general public. Because BCBSM has failed to satisfy the tenets of *Procter & Gamble Co. v. Banker's Trust Company*, 78 F.3d 219 (6th Cir.1996) and *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165 (6th Cir.1983), these exhibits should not be maintained under seal. Nor should the November 16, 2001 hearing record be sealed.

## II. ANALYSIS

 FRCP 26(c) allows the sealing of court papers only for "good cause shown" to the Court that the particular documents justify court-imposed secrecy. *Bankers Trust*, 78 F.3d at 227. To meet this burden, courts traditionally require that the party wishing to have confidential information in the court record kept under seal show that disclosure of the information will result in some sort of serious competitive or financial harm. *See, e.g., Waelde v. Merck, Sharp & Dohme*, 94 F.R.D. 27, 28 (E.D.Mich.1981) ("The movant must make a 'particularized showing that the information sought is confidential' and come forth with 'specific examples' of competitive harm."); *Deford v. Schmid Products Company*, 120 F.R.D. 648, 653 (D.Md.1987) ("Where a business is the party seeking protection, it will have to show that disclosure would cause significant harm to its competitive and financial position. That showing requires specific demonstrations

of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations of potential harm.").

In the present case, Defendant fails to make any particularized showing with respect to any one document. Instead, Defendant relies on a conclusory affidavit from Susan Bayless, a management employee of BCBSM. She states that the exhibits contain confidential and proprietary information because they reveal BCBSM's "policies and procedures relating to its claims processing procedures" and that "BCBSM would be harmed if its competitors were able to have access to those documents." Whether Ms. Bayless' concerns are fanciful or legitimate is not readily apparent. These concerns about future use by a competitor are not always easy to demonstrate. An *in camera* inspection of the exhibits at issue did not convince the undersigned that competitors of BCBSM would have any interest in its claims processing procedures, particularly those that are now outdated or did not work well.[3] At the second in-person hearing, BCBSM's counsel could not point to any specific item similar to a computer program "source code" (or other such critical information) that was confidential and of clear proprietary value. It would seem that, whatever BCBSM's general claims and procedures were before June 1998, they are currently stale and competitively useless since that month when the State of Michigan enacted a uniform-wide standard for the payment of medical emergency claims. Yet, it is possible these former BCBSM systems have portions that are still used by BCBSM and that would be copied and used by its competitors.

Defendant also argues that it should not be penalized for undertaking a self-critical analysis of its claim procedures. Yet, as conceded by Defendant, Michigan does not recognize any self-critical analysis privilege (outside of the hospital context). There is little competitive advantage in knowing that BCBSM studied and improved administrative procedures and computer programs concerning medical emergency room benefits that were not working properly.[4] Moreover, as pointed out by Plaintiff, Defendant attached an exhibit concerning its medical emergency redesign implementation to a pleading and did not request that it be maintained under seal.

After a thorough consideration of BCBSM's arguments, it is concluded that it is not necessary to maintain the exhibits under seal that involve the redesign of its emergency room procedure. Any legitimate proprietary concerns of BCBSM can be accommodated by a more limited order that would monitor access and, if appropriate, restrict copying of these exhibits by its competitors.

### III. ORDER REGARDING UNSEALING:

All exhibits to Plaintiff's July 12th and August 23rd motions (Docket #s 37 & 49) will be unsealed and filed in the Court's public record. These exhibits shall be

---

**3.** BCBSM asserts that competitors would benefit even from seeing BCBSM's superceded claims processing systems that had certain problems and limitations. The competitors could avoid the cost and delays of trying these inferior systems.

**4.** While Defendant might be embarrassed if competitors published BCBSM's "candid evaluations" of aspects of its business, mere embarrassment is not enough to satisfy the requirements of *Bankers Trust* or FRCP 26(c). *See, e.g., Brown & Williamson,* 710 F.2d at 1179 (finding that harm to a company's reputation does not justify sealing court records); *Nicklasch v. JLG Industries, Inc.,* 193 F.R.D. 570, 574 (S.D.Ind.1999) (finding that possible embarrassment *is* not enough *to* seal court records).

kept in a separate file folder or envelope containing the following **Notice to Clerk's Office and Protective Order** regarding the certain of those exhibits:

Defendant asserts that the enclosed **Exhibits F–O,Q,R,T,U & V** from Plaintiff's July 12th memorandum (**Dkt.# 37**) and **Exhibit 4** from Plaintiff's August 23rd memorandum (**Dkt.# 49**), which were obtained from it, are confidential and proprietary and would provide a benefit to its competitors. For reasons stated in a November 20, 2001 Memorandum Opinion, **IT IS ORDERED that these above-noted exhibits shall not be shown to or copied for anyone** (except a member of the media, properly identified, and not acting at the request of a health care provider or insurer) **absent further order of this Court** following notice to and an opportunity to be heard by Defendant. A copy of this order shall be attached to the Clerk's Office copy of the exhibits to Docket # s 37 and 49. An Acknowledgment Copy of this order shall be signed by anyone seeing or copying these exhibits and filed with the record. **Any violation of this order, or effort to circumvent its purpose by any misrepresentation or deceitful device or action, may subject the violator to contempt sanctions of the Court.**

IV. *PROTECTIVE ORDER TO PLAINTIFF'S COUNSEL:*

Plaintiff's counsel shall not copy or allow access to the above-specified exhibits outside of this litigation absent consent of BCBSM or further order of this Court.

Counsel for the parties shall meet and confer about the use of this format for the unsealing of exhibits to be filed in support of future motions in an effort to arrive at a stipulated order or to limit the areas of dispute over sealed documents which will need to involve judicial intervention.

So ORDERED.