MEMORANDUM OF DECISION ON MOTION FOR ORDER SEALING COURT FILE
JANE W. FREEMAN, Judge.
The Plaintiff filed this action on December 15, 2008 claiming that certain provisions in the Tribal Membership Ordinance, MTC S 31-21, et seq.[1], are unconstitutional *111 and that “Good Standing” proceedings of the Council of Elders (“COE”), on a complaint filed against him, violate the Mohegan Constitution (“Constitution”) and the Mohegan Court System Ordinance, MTC § 1-1, et $eq. On January 21, 2009, the COE and the Mohegan Tribe of Indians of Connecticut (“Tribe”) filed a “Motion For Order Sealing Court File Pending Hearing” (“Motion to Seal”) requesting that the entire Court file be sealed pending a hearing. The Motion to Seal was presented to the Court ex parte and the relief requested was granted by the Court, Guernsey, C.J.,[2] pending a hearing to be held on January 23, 2009.
Immediately before the commencement of the hearing on January 23, 2009, the Defendants filed a “Motion For Closure of Courtroom” (Pleading # 120). In order to provide the Plaintiff and the press with the opportunity to address this motion, the Court continued the hearing until January 30, 2009. At the commencement of the hearing on January 30, 2009, the Court set guidelines for the conduct of the hearing. The Defendants informed the Court that these guidelines had addressed their concerns regarding closure of the courtroom and withdrew their motion. The Court then conducted an evidentiary hearing on the Motion To Seal. At the conclusion of the hearing, the Court modified the “Order For Temporary Sealing” by unsealing the entire file except for the portion of the civil complaint (Pleading # 100) consisting of pages 7-22 (“Complaint Attachment”) and the portion of Pleading # 115 consisting of Exhibit B to the affidavit of Jeanette Wit-kowski (“Exhibit B”). The Court also ordered that the Complaint Attachment and Exhibit B remain under seal until further order of the Court.
The Complaint Attachment includes, inter alia, a copy of the Request For “Good Standing” Determination filed with the COE, concerning the Plaintiff (“Good Standing Complaint”). Attached to the “Good Standing” Complaint, are several articles the Plaintiff posted to his website.[3] Exhibit B is a letter from the Plaintiff to the COE confirming the date of the hearing on the “Good Standing” Complaint and his intent to provide a written response to the “Good Standing” Complaint. The issue presented then, is whether the Complaint Attachment and Exhibit B should remain under seal.
I. THE CONFIDENTIALITY PROVISION IN THE TRIBAL MEMBERSHIP ORDINANCE DOES NOT APPLY TO THE RECORDS OF THE MOHEGAN TRIBAL COURT
The Defendants claim that the Complaint Attachment and Exhibit B are *112 required to be sealed under the Tribal Membership Ordinance, MTC § 31-21(e), because they are memoranda or communications regarding the Plaintiffs membership status and constitute confidential member enrollment information. In relevant part, the ordinance provides as follows:
Confidentiality .... Applicants and tribal members shall have access by appointment to their own enrollment and membership records, and to all materials pertaining to their own light to membership.... No application, or the substance of the information contained therein or accompanied therewith, or any memoranda or communications regarding the eligibility for enrollment of any person or the membership status of any person, shall be made available to any person, except at the direction of the Council of Elders.
MTC § 31-21(e) (emphasis added).
There can be no question that records on file in the office of the COE concerning the membership status of any person are confidential under MTC § 31-21(e). However, MTC § 31-21(e) must be read together with the Mohegan Court System Ordinance, MTC § 1-1, et seq., and specifically with MTC § 1-53, in order to determine whether these same records, when made an exhibit to a complaint filed in the Tribal Court, are still confidential under the provisions of MTC § 31-21(e). MTC § 1-53 provides, in relevant part, as follows:
Each division of the Mohegan Tribal Court shall keep a record of all proceedings .... A record of all proceedings shall be kept by the appropriate division and shall be available for public inspection unless prohibited, by order of the Court, provisions of this Article or by applicable laws.
MTC § 1-53 (emphasis added). Thus there is a mandate in MTC § 1-53, that records of the Tribal Court be available for public inspection, with certain specified exceptions. The Defendants argue that the Complaint Attachment and Exhibit B fall within an exception and that their inspection is “prohibited ... by applicable laws,” i.e. MTC § 31—21(e), because they concern the membership status of any person. Therefore, the Court must construe this exception to the public inspection mandate in MTC § 1-53, together with the confidentiality provision in MTC § 31-21(e), in order to determine whether inspection of the Complaint Attachment and Exhibit B are prohibited by MTC § 31—21(e).
Several rules of statutory construction are pertinent to the Court’s analysis. “The principles that govern statutory construction are well established. When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature ....” Tawanna Quidgeon v. Joseph Quidgeon, Jr., 1 M.T.C.R 86, 87 (2009) (citing Southern New England Telephone Co. v. Cashman, 283 Conn. 644, 650, 931 A.2d 142 (2007)). In any case of statutory construction, the analysis begins with the language of the statute and if the statutory language provides a clear answer, it ends there. Id. (citing Harris Trust and Savings Bank v. Salomon Smith Barney, Inc., 530 U.S. 238, 254, 120 S.Ct. 2180, 147 L.Ed.2d 187 (2000)). “When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same matter. ...” Id. “In determining the effect of a subsequent statutory amendment on earlier legislation we are guided by well defined principles of statutory interpretation. *113 We recognize the usual presumption that, in enacting a statute, the legislature intended a change in existing law.” State v. Magnano, 204 Conn. 259, 277, 528 A.2d 760 (1987) (citations omitted). “Where more than one statute addresses a subject, it is presumed that the legislature intended them to be read together to create a harmonious body of law.” Tawanna Quidgeon v. Joseph Quidgeon, Jr., 1 M.T.C.R. 86 (citing Mayor v. Mayor, 17 Conn.App. 627, 633, 554 A.2d 1109 (1989)).
It is not clear from the text of MTC § 31-21 (e) whether the confidentiality provisions pertaining to the “membership status of any person” were intended to apply only to records on file in the office of the COE or to all tribal records, including records in the Mohegan Tribal Court. The circumstances surrounding the various amendments to the Mohegan Law and Order Code (“Code”), however, are instructive.[4]
The Mohegan Tribal Council (“Council”) adopted the Code on July 29, 1998[5] for the purpose, inter alia, of establishing the Mohegan Tribal Court, defining its jurisdiction and adopting rules for the Court. Title III, Chapter A, Section 1 of the Code provided as follows:
Each division of the Mohegan Tribal Court shall keep a record of all proceedings .... A record of all proceedings shall be kept by the appropriate division and shall be available for public inspection unless prohibited by order of the Court or by applicable law.
Id. (emphasis added).
On June 19, 2002, the Council repealed the 1998 Code. It also adopted a new Code, MTQ 2002-06,[6] in which it made substantial changes to the prior provisions regarding inspection of Tribal Court records and reporting of decisions related to tribal enrollment and membership. The Council limited the inspection of records related to enrollment and membership actions to the parties, their legal counsel and tribal members [7] and provided that such court records would not be available to the general public.
Inspection of Court Records.
A. The Court shall preserve a record of all court hearings and documents filed with the Court. Any records regarding Mohegan Tribal enrollment and membership actions shall be kept separate from all other records.
B. All court records, other than the records related, to Mohegan Tribal enrollment and membership actions shall be available to the general public for inspection in the Court Clerk’s office, except upon order of the Court,
C. Any records related to Mohegan Tribal enrollment and membership actions shall not be available to the general public ....
MTO 2002-06, Title III, Chp. A, Sec. 2 (emphasis added).
Reporting of Decisions
A. [E]ach division of the Mohegan Tribal Court shall keep a record of all proceedings.... A record of all proceedings shall be kept by the appropriate division and shall be available for public *114 inspection unless prohibited by order of the Court, provisions of this Article or by applicable laws.
B. Reporting of decisions related to Mohegan Tribal enrollment and membership shall not be available to the general public....
MTO 2002-06, Title III, Chp. A, Sec. 3 (emphasis added).
The Defendants argue that the “unless prohibited ... by applicable laws ” clause currently in MTC § 1-53 (and formerly in MTO 2002-06, Title III, Chapter A, Section 3A) was intended to refer to the Mohegan Tribal Membership Ordinance, MTC § 31-21, et seq., so that public inspection of court records is now prohibited by MTC § 31-21 (e). Their argument, however, is not supported by a review of two sections in the earlier Code, MTO 2002-06.
Title III, Chapter A, Section 2.C. of MTO 2002-06 provided that court records related to Mohegan tribal enrollment and membership actions would not be available for public inspection; on the other hand, Title III, Chapter A, Section 3.A. of MTO 2002-06 provided that court records would be available for public inspection “unless prohibited ... by applicable laws” (this is the same clause now in MTC § 1-53). If the “unless prohibited ... by applicable laws” clause in the latter section had been intended to prohibit inspection of court records related to enrollment and membership matters, then this clause would have been superfluous, because that prohibition was already contained in the former section. “It is a basic tenet of statutory construction that the legislature [does] not intend to enact meaningless provisions.... [I]n construing statutes, we presume that there is a purpose behind every sentence, clause, or phrase used in an act and that no part of a statute is superfluous (citations omitted).” Boyne v. Town of Glastonbury, 110 Conn.App. 591, 597, 955 A.2d 645 (2008).
On October 2, 2002, the Tribal Council repealed MTO 2002-06 and adopted a new Code, MTO 2002-09,[8] which was later codified as MTC § 1-1, et seq. On October 15, 2008 the Code was repealed and the Tribal Council adopted the Mohegan Tribal Court System Ordinance, MTC § 1-1 et seq. Ever since the repeal of MTO 2002-06 in 2002, there has been no provision in either the Code or in the Mohegan Tribal Court System Ordinance, MTC § 1-1, et seq., expressly prohibiting public access to Tribal Court records related to enrollment and membership matters. Applying the foregoing rules of statutory construction, it is evident that in enacting MTO 2002-09, the Council intended to make a change in the law which had previously prohibited inspection of and access to Court records regarding enrollment and membership. No facts have been presented to rebut this presumption. State v. Ma.gna.no, supra, 204 Conn, at 277, 528 A.2d 760. The Court holds that the “unless otherwise prohibited ... by applicable law ” clause currently in MTC § 1-53 (and formerly in MTO 2002-06, Title III, Chp. A, Sec. 3.A) does not refer to or include the Mohegan Tribal Membership Ordinance, MTC § 31-21, et seq.
Further, the Defendants’ contention that the express language in MTC § 31—21(e) makes Tribal Court records relating to membership and enrollment confidential, ignores the context of several clauses in MTC § 31—21(e). “Because the meaning of statutory language, plain or not, depends on context, the interpretation of a statute requires consideration of the relevant provision in conjunction with the *115 entire statute.” Yerdon v. Henry, 91 F.3d 370, 376 (2d Cir.1996) (emphasis added). The first clause in MTC § 31-21 (e) provides that “[a]pplicants and tribal members shall have access by appointment to their own enrollment and membership records, and to all materials pertaining to their own right to membership.” Another clause in the same subsection, provides that “[n]o ... memoranda or communications regarding the ... the membership status of any person, shall be made available to any person, except at the direction of the Council of Elders.” The Defendants’ argument that the latter clause pertains to records on file in the Tribal Court ignores its context in this subsection. The first clause in the subsection clearly applies to records on file in the COE's office, which is where such records are kept and may be reviewed by tribal members. If the latter clause in the same sentence were construed to apply to records on file in the Tribal Court, such a construction would be totally out of context with the first clause. The latter clause, reading it in context with the first clause in the ordinance, must refer to memoranda, or communications also on file in the COE office. Therefore, consistent with the rule of statutory construction that the language in a statute must be construed in context, the Court finds that there is nothing in MTC § 31-21(e) which makes records filed with the Tribal Court confidential, even if they were confidential when on file in the COE’s office.
Finally, only the Council has authority to establish a tribal court and define its powrers and duties. Mohegan Const., Art. IX, § 2(o).[9] This constitutional authority includes the exclusive authority to adopt rules governing the availability of Tribal Court records for public inspection. The Tribal Council’s recognition of its exclusive authority to legislate in this area is manifest from the several revisions it has made to the “record inspection” and “reporting of decisions” provisions in the Code. The Defendants’ argument that the inspection of Tribal Court records has been limited by the COE in MTC § 31-21(e) has no merit where the exclusive authority to legislate concerning the inspection of Tribal Court records has been committed to the Council. Mohegan Const., Art. IX, § 2(o).
Based on the legislative history of the Code and well settled rules of statutory construction, the Court rejects the Defendants’ argument that MTC § 31—21(e) makes records in the files of the Tribal Court related to tribal membership confidential. In addition, there is no rule of practice which makes tribal membership and enrollment records filed in the Tribal Court confidential or exempt from public inspection.
II. THE DEFENDANTS HAVE ARTICULATED A SUBSTANTIAL PRIVACY INTEREST WHICH WILL BE INJURED IF THE COMPLAINT ATTACHMENT IS UNSEALED AND PROTECTION OF THIS PRIVACY INTEREST OVERRIDES THE PUBLIC INTEREST IN ACCESS TO THIS JUDICIAL DOCUMENT
“It is clear that courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents.” Nixon v. Warner Commun *116 ications, Inc., 435 U.S. 589, 597, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570 (1978). “Public access to judicial records and documents allows the citizenry to ‘monitor the functioning of our courts, thereby insuring quality, honesty and respect for our legal system.’ ” FTC v. Standard Fin. Management Corp., 830 F.2d 404, 410 (1st Cir.1987) (citation omitted). “It is uncontested, however, that the right to inspect and copy judicial records is not absolute. Every court has supervisory powers over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes.” Nixon v. Warner Communications, Inc., supra, 435 U.S. at 598, 98 S.Ct. at 1312.
The Defendants argue in their supplemental brief that the documents still under seal are not “judicial documents” so that there should be no presumption of public access to these documents. They contend that the Complaint Attachment was gratuitously attached to the Complaint by the Plaintiff and is not necessary to the Court’s adjudication of the issues in the Complaint. The Defendants’ argument is consistent with the approach taken in the Second Circuit. United States v. Amodeo, 44 F.3d 141, 145 (2d Cir.1995). Other circuits have adopted different approaches to determining whether an item filed with the Court is a “judicial document.” The Third Circuit has “focused on the technical question of whether a document is physically on file with the court.” Id. (citing Pansy v. Borough of Stroudsburg, 23 F.3d 772, 782 (3rd Cir.1994)). The First Circuit has adopted a middle ground, holding that “documents must have a role in the adjudication process in order to be accessible and that documents that have no such role, such as discovery documents, cannot be reached.” Id. (citing Anderson v. Cryovac, Inc., 805 F.2d 1, 13 (1st Cir.1986)). The First Circuit approach has merit. If a document filed with the Court has some role in the adjudication process, then it should be accessible as a “judicial document.” The Complaint Attachment will have some role in the adjudication process. Many of the claims for relief in the Plaintiffs Complaint relate to either the procedures to be used or the substantive law to be applied in the “Good Standing” proceedings. Therefore, the “Good Standing” Complaint which is part of Complaint Attachment will have some role in the adjudication process and is a “judicial document.”
Having determined that the Complaint Attachment is a “judicial document,” the next inquiry is whether the Defendants have sustained their burden of proving that the presumption of public access to the documents now under seal is overcome by a substantial privacy interest. Vargas v. Doe, 96 Conn.App. 399, 407, 900 A.2d 525 (2006). The burden of establishing “good cause for an order sealing court records, and the burden of establishing the propriety of such an order, rests with the party seeking the order.” Hayward v. Mashantucket Pequot Tribal Council, 4 Mash.Rep. 55, 57, 5 Mash. 263, 2002 WL 34244368 (citations omitted). Conclusory or generalized statements do not suffice; there must be a particular and specific demonstration that the disclosure of the information sought to be sealed will work a clearly defined and serious injury to the party seeking closure. Publicker Industries, Inc. v. Cohen, 733 F.2d 1059, 1071 (3rd Cir.1984); Hayward v. Mashantucket Pequot Tribal Council, supra, 4 Mash.Rep. at 57, 5 Mash. 263 (citing Damiano v. Sony Music Entertainment, Inc., 168 F.R.D. 485, 490 (D.N.J.1996)). “Broad allegations of harm, bereft of specific examples or articulated reasoning, are insuffi *117 cient. In Re Cendant Corp., 260 F.3d 183, 194 (3rd Cir.2001).
In some instances a legislative body may have determined that specific privacy concerns outweigh the public’s interest in open judicial proceedings or access to judicial documents.[10] The same standards apply whether the issue is access to judicial documents or to judicial proceedings. Vargas v. Doe, supra, 96 Conn.App. at 407, 900 A.2d 525 (the same considerations apply to questions of court closure, the sealing of documents and proceeding by a pseudonym). In the absence of legislative exceptions to the presumption of openness of court proceedings, and where a limit on disclosure is requested, “the trial court must consider whether a substantial privacy interest exists to override the public’s interest in open judicial proceedings.” Id.
Interestingly, the Defendants have not claimed a privacy interest in the matters identified by the Court, Guernsey, C.J., in the temporary sealing order (i.e. the financial negotiations conducted on the part of the Mohegan Sun as well as the benefits available to members of the Mohegan Tribe not generally known to the general public). At the hearing on the Motion to Seal, the Defendants failed to present any evidence that the disclosure of financial negotiations conducted on the part of the Mohegan Sun would cause them harm; that financial negotiations were ongoing; or that the Tribe would be harmed competitively by the disclosure of the financial negotiations. Nor did the Defendants present any evidence to demonstrate that they would be harmed by the disclosure of tribal member benefits. The Defendants made a generalized statement in their brief that disclosure of “internal Tribal matters” would harm the financial interests of the Tribe and its members, but there was no evidence that such a disclosure would work a clearly defined and serious injury.
Instead, the Defendants argue that the substantial privacy interest which exists is the integrity of the “Good Standing” process before the COE. (Emphasis added). In particular, the COE contends that there is a long standing tradition of privacy in enrollment and membership matters committed to the COE. A former chairperson of the COE testified as to the confidential nature of these “Good Standing” proceedings. “Good Standing” hearings are closed to tribal members and the non-tribal public, and membership decisions are only released to tribal members on the tribal website and in a tribal publication circulated in the tribal community. The former chairperson also stated that even before the COE made “Good Standing” determinations, matters pertaining to membership and enrollment had historically been treated as confidential by the COE.
The Court agrees with the Defendants that they have a substantial privacy interest in the protection of matters related to tribal membership and enrollment. The subject matter of the “Good Standing” Complaint, i.e. Plaintiffs membership status, is a matter specifically committed to the COE under Article X, § 2(j) of the Constitution. Indian tribes have the power to determine their own membership. Santa Clara Pueblo v. Martinez, 436 U.S. 49, 55, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). “The powers of Indian tribes over their* members are broad and generally *118 exclusive of both federal and state power.” Cohen’s Handbook of Federal Indian Law, 2005 Ed., § 4,01(1 ][b]. The GOE’s determinations regarding enrollment and membership are not the concern of the non-tribal public. These determinations are part of the Tribe’s internal affairs. The COE has adopted membership and enrollment ordinances which make membership and enrollment information maintained by them and proceedings conducted by them confidential.[11] "An Indian nation is free to maintain or establish its own form of government, unless Congress has passed a statute ... dictating [the] tribe’s form of government.” Id. at § 4.01[2][a], The Defendants, then, have a clear privacy interest in the protection of enrollment and membership matters, including without limitation, enrollment and membership information, proceedings, decisions and records.
The Defendants also contend that “[t]he Mohegan Tribe’s status as ‘distinct political community’ means that its internal deliberations, concerns and values are not those of the non-tribal public” and that disclosure “of internal Tribal matters can be antithetical to the Mohegan Tribe’s interests as a distinct political community-including the financial interests of the Tribe as an entity and the financial interest of Tribal members-and can undermine its identity as a sovereign nation.” (Brief In Support Of Motion For Order Sealing Court File, Pleading # 121, p. 4).
Many courts have required the party requesting judicial documents to be sealed to show that disclosure of the information will result in some kind of competitive or financial harm. Tinman v. Blue Cross & Blue Shield of Michigan, 176 F.Supp.2d 743, 745 (E.D.Mich.2001). But the likely injury to the privacy interests of the Defendants in this case is no less compelling. In the tribal context, any impairment of the Tribe’s ability to protect the integrity and confidentiality of its “Good Standing” process, with a level of confidentiality consistent with its customs and traditions, constitutes serious injury.
Where a privacy interest exists, a court must engage in a balancing of this interest against the public’s right of access.
Values other than openness and the free flow of information also inhere in our system of justice, including ... the protection of the privacy of others. Occasionally, the public’s right of access must give way to these other values. Therefore, a court must balance the public’s right of access against these competing interests and must consider the injury to those interests should access be permitted. The standard against which this balancing of interests is conducted permits documents to be sealed only if “specific, on the record findings are made demonstrating that’ closure is essential to preserve higher values and is narrowly tailored to serve that interest.’ ”
U.S. v. Gerena, 703 F.Supp. 211, 213 (D.Conn.1988) (internal citations omitted).
A factor which a court should consider in conducting the balancing test is “whether the case involves issues important to the public. If [there are] matters of legitimate public concern, that should be a factor weighing against entering or maintaining an order of confidentiality ... On the other hand if a case ... concerns matters of little legitimate public interest, *119 that should be a factor weighing in favor of granting or maintaining an order of confidentiality.” Pansy v. Borough of Stroudsburg, 23 F.3d 772, 788 (3rd Cir.1994) (citations omitted). The non-tribal public has no legitimate interest in matters pertaining to the Mohegan Tribe’s enrollment and membership, which are the internal affairs of the Tribe. Indian tribes have the right to determine their own membership requirements and procedures and the non-tribal public has no role in these decisions or the process by which they are made.
The Defendants contend that there would be serious injury to their privacy interest in membership and enrollment matters (and proceedings related thereto) if public access were provided to the Complaint Attachment. The Complaint Attachment includes a complete copy of the “Good Standing” Complaint filed with the COE. The Defendants claim that public access would: undercut the Tribe’s long standing custom and tradition regarding the non-disclosure of membership and enrollment matters; impair the integrity of the “Good Standing” process; and subvert a matter committed to the COE.
When oral argument on the Motion to Seal was heard by the Court, the COE’s “Good Standing” proceedings concerning the Plaintiff were pending. Shortly thereafter the Court, Guernsey, C.J., stayed all proceedings in this case (Pleading # 130). The COE has now concluded its “Good Standing” proceedings concerning the Plaintiff and has determined that the Plaintiff is not in “Good Standing.” (Pleadings # 132). On May 6, 2009, after the stay of proceedings in this case expired, the Plaintiffs Motion to Amend Complaint was granted. The operative complaint is now the Amended Complaint dated May 4, 2009 (Pleading # 131). Key aspects of the COE’s “Good Standing” proceedings concerning the Plaintiff are described in the Amended Complaint and in the verified Request for Injunction on file with the Court. These include the COE’s decision that the Plaintiff is not in “Good Standing” and its decision that the Plaintiff violated specific sections of the Tribal Membership Ordinance, MTC § 31-21, et. seq. Further, at the May 6, 2009 Court hearing on the Plaintiffs Request for Injunction, the Court was provided with additional information regarding these “Good Standing” proceedings, including the following: the names of the complainants; the names of all witnesses who testified at the hearings; the procedures used by the COE in conducting the “Good Standing” proceedings; the final determination of the COE and the terms of the COE reprimand. Therefore, there has already been substantial disclosure on the public record of many key aspects of the COE’s “Good Standing” proceedings regarding the Plaintiff. However, there has not been disclosure of the detailed facts which served as a basis for the “Good Standing” Complaint, and which are in the Complaint Attachment.
The privacy interest of the Defendants in the protection of matters related to tribal membership and enrollment, including the integrity of the COE’s Good Standing proceedings, weighs in favor of continuing to seal the Complaint Attachment. Exhibit B, however, is simply a letter regarding the scheduling of the Plaintiffs “Good Standing” hearing and Plaintiffs intent to respond to the “Good Standing” Complaint. The full content of this letter has already been fully disclosed in the unsealed affidavit of Jeanette Wit-kowski which is in the Court’s file as part of Pleading # 115. Allowing public access to Exhibit B will in no way cause injury to the privacy interests of the Defendants.
*120 III. THERE ARE NO REASONABLE ALTERNATIVES TO THE CONTINUED SEALING OF THE COMPLAINT ATTACHMENT
The continued sealing of the Complaint Attachment is the least restrictive means of protecting the privacy interest of the Defendants. Publicker Industries, Inc. v. Cohen, supra, 733 F.2d at 1070 (“to limit public access to civil trials there must be a showing that the denial serves an important governmental interest and that there is no less restrictive way to serve that government interest”). The Court has already unsealed all remaining portions of the Court’s file (and will unseal Exhibit B also). Making a redacted version of the Complaint Attachment available is impractical because most of it consists of the “Good Standing” Complaint, with the articles published on Plaintiffs website attached. For the reasons set forth at pages 12-14, disclosure of the “Good Standing” Complaint, would cause serious injury to the privacy interest of the Defendants.
IV. PORTIONS OF THE COMPLAINT ATTACHMENT WERE PUBLISHED ON THE PLAINTIFF’S WEBSITE AND WERE AVAILABLE FOR PUBLIC INSPECTION IN THE COURT’S FILE FOR SUCH LIMITED PERIODS OF TIME THAT THEY HAVE NOT BEEN UNALTERABLY PLACED IN THE PUBLIC DOMAIN
At the hearing on the Motion to Seal, the Plaintiff testified that one article written by him and in the Complaint Attachment was first posted to his website on November 26, 2008. He further testified that he removed all of his articles in the Complaint Attachment from his website on “last Sunday” (i.e. January 25, 2009). The Court takes judicial notice of the fact that the Complaint Attachment remained available for public inspection in the Court’s file from December 15, 2008, when the action was filed, until January 21, 2009, when the temporary sealing order was signerl. There was no evidence offered by either party as to how many persons were likely to have viewed the Complaint Attachment either on the Plaintiffs website or in the Courts’ file. However, the facts indicate that it was only available to the public on the Plaintiffs website for slightly less than eight weeks and in the Court file for about five weeks.
Even in a case where documents had been inadvertently declassified by the government and had made their way into the; public domain for a period of time, it has been held that such documents could be reclassified and thereby removed from the public domain. United States v. Progressive, Inc., 467 F.Supp. 990, reh’g denied, 486 F.Supp. 5 (W.D.Wis.1979), appeal dismissed 610 F.2d 819 (7th Cir.1979). Where there has been only a limited period of public access to the Complaint Attachment, its continued sealing will likely be effective to protect the privacy interest of the Defendants.
V.CONCLUSION
The Defendants have established a privacy interest in the protection of matters related to tribal membership and enrollment, including the integrity of the COE’s “Good Standing” proceedings with respect to the Plaintiff. The unsealing of the Complaint Attachment would cause serious injury to this privacy interest and the maintenance of the Complaint Attachment under seal is the least restrictive means of protecting that interest. The non-tribal public has no legitimate interest in the Mohegan Tribe’s membership and enroll *121 ment issues which are internal tribal matters.
In future proceedings in this case, however, particularly in connection with the Plaintiffs claims that he was not accorded due process by the COE, one or more of the parties may offer additional testimony about the “Good Standing” proceedings and/or documents which were submitted to the COE. The Court will need to determine, in each instance, whether to permit the proffered testimony or evidence, taking into account the substantial privacy interest of the Defendants in enrollment and membership matters, the prior disclosures already in the Court record concerning the COE’s “Good Standing” proceedings and the Court’s need for such information in order to adjudicate this case.
It is therefore ordered that the temporary sealing order of the Court, Guernsey, C.J., as previously modified on January 30, 2009, shall remain in full force and effect until further order of the Court, except that Exhibit B (a portion of Pleading #115) shall be unsealed.

. MTC § 31-24 provides for the “Suspension of Tribal Rights, Benefits and Privileges” on various grounds. A member’s “Good Standing" may be revoked under MTC § 31- *111 24(a)(6) for “[w]illful misconduct of an egregious or repetitious nature, which results in significant harm to any person, property, or financial interest of the Tribe, or which is seriously detrimental to the Mohegan Tribe.” It may also be revoked under MTC § 31— 24(a)(8) for ‘‘[vjioiation of any policies or ordinances of the Mohegan Tribal Council or Council of Elders." The Plaintiff challenges the constitutionality of both MTC §§31-24(a)(6) and 31-24(a)(8).

. Chief Judge Guernsey’s “Order For Temporary Sealing" (Pleading #119) provided that "[wjhile orders sealing files are generally not favored (citation omitted), in the instant case the Defendants have raised protected matters of sufficient overriding interest, namely the financial negotiations conducted on the part of the Mohegan Sun as well as the benefits available to members of the Mohegan Tribe not generally known to the public, so as to justify the temporary sealing of the file pending a full hearing."

. The Plaintiff testified at the hearing on the Motion lo Seal that he posted the articles attached to the “Good Standing” Complaint on his website.

. The initial ordinance establishing the Mohegan Tribal Court was the Mohegan Tribal Law and Order Code (“Law and Order Code").

. Tribal Resolution 1998-22.

. MTO 2002-06 was adopted by Tribal Resolution 2002-27.

. Procedures were provided for tribal members to inspect redacted records in these cases.

. Tribal Resolution 2002-43.

. Article IX, § 2(o) of the Mohegan Constitution, provides as follows: "The powers of The Tribal Council shall include all executive and legislative powers reasonable and necessary to achieve the tribal goals recited in the Preamble hereof, and shall further specifically include, but not be limited to, the following powers: ... (o) to establish a tribal court system, defining the powers and duties of that court system.”

. See Vargas v. Doe, 96 Conn.App. 399, 406-07, 900 A.2d 525 (2006), which lists Connecticut statutes related to juvenile matters; youthful offender proceedings; termination of parental rights cases; and others in which the legislature has denied or limited public access to protect specific privacy interests.

. MTC § 31-2(c) provides in part as follows: "Confidentiality. Each application for enrollment and any information sought or obtained by the Enrollment Office or the Council of Elders that directly relates to the eligibility of any person(s) for enrollment in the Mohegan Tribe shall be confidential...." See also, MTC § 31-21(e), supra, p. 112.